Joseph R. Cruse, Jr. (State Bar No. 163982)
LAW OFFICES OF JOSEPH R. CRUSE, JR.
23823 Malibu Road, Suite 130
Malibu, California 90265
Telephone:   (310) 598-3811
Facsimile:    (310) 598-3876
Email:          jcruse@jcruselaw.com

Attorneys for Plaintiffs,
I and U, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| I and U, INC, a California corporation and d/b/a BOOK CUBE; KIUCHI SHOTEN CO. LTD.; and HIDEO KIUCHI<br><br>    Plaintiffs,<br><br>vs.<br><br>Wolters Kluwer Health, Inc., a corporation,<br><br>    Defendant. | CASE NO: 2:18-cv-08469<br><br>**COMPLAINT FOR:**<br><br>1. **MONOPOLIZATION- 15 U.S.C. § 2;**<br>2. **ATTEMPTED MONOPOLIZATION- 15 U.S.C. § 2**<br>3. **VIOLATION OF SHERMAN ACT'S § 1;**<br>4. **VIOLATION OF CLAYTON ACT § 3;**<br>5. **DECLARATORY RELIEF;**<br>6. **DEFAMATION**<br>7. **TRADE LIBEL**<br>8. **FALSE LIGHT**<br>9. **UNFAIR BUSINESS PRACTICES (CA B & P 17200)**<br>10. **UNFAIR TRADE PRACTICES (CA B & P 17500)**<br><br>[JURY TRIAL DEMANDED] |

**COMPLAINT**

Plaintiffs, I and U, Inc., a California corporation and d/b/a Book Cube

("I&U"), Kiuchi Shoten Co. Ltd., and Hideo Kiuchi (collectively hereinafter, "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendant Wolters Kluwer Health, Inc. (hereinafter, "Defendant" or "Wolters") states the following.

Allegations made on belief are premised on the belief that the same are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## I.
## THE PARTIES

1. Plaintiff, I and U, Inc., is a corporation, duly organized and existing under the laws of the state of California, located at 879 W. 190th St., Suite 442, Gardena, CA 90248. Plaintiff also does business as and under a ficticious business Book Cube ("Book Cube"). Plaintiff distributes and markets medical and scientific periodicals and has been exporting medical books and journals to Japan since 1996.

2. Plaintiff Kiuchi Shoten Co., Ltd, is a Japanese corporation which distributes and markets medical and scientific periodicals in Japan since 1987.

3. Plaintiff, Hideo Kiuchi, is a Japanee citizen residing in Japan and is president and CEO of Plaintiff Kiuchi Shoten Co., Ltd.

4. Defendant, Wolters Kluwer Health, Inc., is a corporation organized under the laws of the State of Delaware that regularly transacts business in this judicial district. Defendant is the U.S. Medical publishing arm of the European-based Wolters Kluwer information services group.

## II.
## JURISDICTION AND VENUE

6. This action is brought under the antitrust laws contained in 15 U.S.C.

Complaint 01H.doc

2    COMPLAINT

§ § 1, 2, and 14 et. seq. Under 28 U.S.C.A. § 1331, this Court has jurisdiction to adjudicate this dispute.

7. Venue in this jurisdiction is proper under Clayton Act §§ 4 and 12, 15 U.S.C. §§ 15 and 22; and 28 U.S.C. 1391. Wolters Kluwer Health, Inc. regularly transacts business, has offices in, and is subject to personal jurisdiction in this jurisdiction through the marketing, sale and distribution of medical and other scientific periodicals.

8. Intra-district assignment to the Western division is appropriate pursuant to Civil L.R. 3-2(c) as a substantial part of the events that give rise to the claims as alleged herein occurs in the Western division, where Plaintiffs, I and U, Inc., and Bookcube's principal places of business are located.

## III

## NATURE OF THE CASE

9. This is an antitrust case. Wolters Kluwer Health, Inc. provides information for professionals and students in medicine, nursing, allied health, and pharmacy sectors and publishes professional health information reference and hand books, textbooks, journals, and newsletters.

11. As a result of its anti-competitive and exclusionary conduct, as discussed throughout this complaint, Defendant currently enjoys a monopoly of distributing various medical publishing content. Defendant's revenues from the sales of this content has increased astronomically and are in part attributable to its three-fold price increases of the publications to its exclusive agents.

12. Defendant claims to identify illegal activity of the Plaintiff's subscriptions.

Complaint 01H.doc

13. Defendant is highly influential in impacting the purchases of these subscriptions.

14. Defendants' claims, whether made in their reports or in their marketing collateral, contend that Plaintiffs illegally acquire their subscriptions.

15. Plaintiffs are small businesses and business owners selling subscriptions of technical and medical publications to scientists, hospitals, doctors and other related professionals and rely on large publishers to sell them their publications for distribution.

16. Wolters has prevented and continues to prevent Plaintiffs from offering on the market an alternative source for medical journals that would have been a less expensive alternative than selling through Wolter's exclusive agents. Wolters has maintained its monopoly over the medical journal market by supplying its customers misinformation about Plaintiff's products and services, and by engaging in a host of other anti-competitive conduct detailed in this complaint.

17. In 2017, Wolters manipulated and effectively removed from the market all alternative sources to purchase their medical content, including Plaintiffs. At least as early as mid-2018, Wolters orchestrated a misleading public relations campaign which, ultimately, persuaded customers to further refuse to buy any medical publications from the Plaintiffs.

18. Because Wolters succeeded in its misleading and anti-competitive campaign in keeping Plaintiff's distribution off the market, Plaintiff is left with no choice but to apply to each customer for approval to be authorized to sell Wolters publications. Again, in efforts to preclude all competition in the medical publication market, Wolters vehemently opposed Wolter's direct approach to its customers and informed Plaintiff's customers that they were not to purchase any of their publications from Plaintiff.

Complaint 01H.doc                                             COMPLAINT

19. Wolters continues to not give up easily its dominant position in the market, and devised a scheme to preclude Plaintiff from reaping the benefits of its enduring and costly efforts to get information to their customers. Since at least as early as May 15, 2018, Wolters has hampered Plaintiff's success in the market through various anti-competitive and exclusionary acts designed to perpetuate its monopoly over the medical publications market, including issuing misleading information about Plaintiffs designed to discourage Plaintiff's long-time customers from purchasing from Plaintiff and using exclusive and "disguised" exclusive contracts with authorized agents, which either preclude or discourage, by means of financial incentives, these entities from placing Plaintiff on their purchase list. The preclusion has resulted in significantly lower than expected sales for Plaintiff.

20. Throughout its opposition of competition in the medical publication market and its perpetuation of a monopoly, Wolters has continued to increase the price of its publications and reap the benefits of a monopoly. Wolter's monopolization of the market through anti-competitive and exclusionary conduct has not only proximately caused Plaintiffs hundreds of thousands of dollars in damages, but has also deprived customers of a lower cost alternative to Wolter's publications.

21. At the core of this action is not only the anti-competitive behavior of Wolters but also Wolters has consistently provided a misleading impression that Plaintiffs were outrageously engaging in illegal activities soliciting their customers – which in turn has caused additional significant financial harm to Plaintiffs. In doing so, Wolter's conduct has destroyed fair competition – which has resulted in injury to the public interest.

COMPLAINT

Complaint 01H.doc

# IV

# FACTUAL BACKGROUND COMMON TO ALL CLAIMS

22. Since 1978, Wolters has been distributing and marketing scientific and medical journals.

23. Since 1987 Plaintiffs has been distributing and marketing medical and scientific periodicals and has been exporting medical books and journals to Japan.

24. In late 2017 Defendant arranged an exclusive sales arrangement which is simply a concerted scheme to greatly restrict the placement of direct orders, for the primary purpose of raising the prices of medical journals and generating higher royalty revenues.

25. This exclusive sales arrangement is an anticompetitive restraint of trade in violation of section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1.

26. Defendant's efforts have imposed market-wide restraints on competition in medical and scientific publishing subscriptions preventing.

27. Defendant currently is acting in concert with customers and sales agents to suppress competition.

28. Some of the strategies advanced by Defendant, such as exclusive sales arrangements, involve restrictive conditions or other restraints on subscriptions designed to raise revenues by reducing or eliminating competition.

29. Defendant's sales representatives are promoting the exclusive arrangements to restrict competition. Under these agreements, each customer agrees to restrict its direct subscriptions, which accounts for a significant portion of the total product category.

30. By severely reducing the number of agents and eliminating competition from the excluded suppliers, the restraint will allow Publishers to garner increased revenues, both through higher rates and through higher prices for the subscriptions,

which will rise as competition falls. These increased fees and prices imposed are ultimately borne by the end-user.

31. Such scheme could not prevail in the marketplace if it were not agreed to by Defendant's customers. One or a handful of customers, acting independently, would be unlikely to implement such a strategy successfully, because the market would disfavor their publications if it is priced substantially higher than those of non-participating customers. Retailers who offer a broad array of medical journals from many different publishers could effectively refuse to carry the overpriced publications from others that attempt such a strategy on their own, and any such uncoordinated effort to raise prices would likely be quickly defeated or would never get off the ground. For that reason, a scheme that magnifies the collective financial interests of the publishers cannot be effectively achieved through the individual actions of one or two or three publishers. The sales agents themselves have emphasized the "risk" that each individual publisher would face if it were to embark on this strategy as a first mover.

32. Each publisher that wishes to participate in this competition-suppressing exclusive sales scheme has a strong incentive, therefore, to see to it that enough other customers agree to go along with the scheme.

33. Wolter's, by the coordinated organization of its sales representatives, has made that happen. Wolters are organizing their sales representatives to act in a consciously parallel fashion and in active coordination through the common instrument and agency. As the common sales agents for the publishers, they provide a ready vehicle and enabler for coordination and concerted action.

34. These restraints cannot be justified by any pretext of "quality" or any purported need to "rationalize" the market for licensed medical publications. These concerted actions are naked restraints of trade and exclusionary acts designed to

Complaint 01H.doc

COMPLAINT

deny and destroy competition.

35. In 2018, Wolters transmitted a letter (attached to this Complaint as **Exhibit A**) informing its readers that Plaintiffs are selling their publications and are doing so "illegally."

36. Although Wolters was notified that this correspondence was clearly erroneous and misleading, Wolters has refused to address any of the specific disputed claims contained in the letter.

37. Plaintiff's prospective customers have consistently and uniformly raised objections to consider doing business with Plaintiffs because of the statements. The power of allegations of illegal behavior from Wolters is immense.

38. The statements contained in the letter are false. Plaintiff's customers have stopped doing business altogether with Plaintiffs after they received a copy of the letter even though they don't like Defendant's agents and would rather conduct business directly with Plaintiffs. Such losses demonstrates that, but for the statements made by Wolters, Plaintiffs would have made many more sales than they have.

39. The letter alleging Plaintiff's illegal activity is erroneous, misleading and give a clear message that Plaintiff's transactions are illegitimate.

## V.
## **CLAIMS FOR RELIEF**
### COUNT ONE
### MONOPOLIZATION

40. Plaintiffs reallege paragraphs 1-38. The relevant geographic markets are the United States and Japan. Plaintiff and Wolters compete on both a nationwide and international basis.

41. The product market in this case is the sale, subscription and distribution of scientific and medical journals and publications.

42. Wolters has monopoly power in the alleged markets and even if there were realistic alternatives to Wolters scientific and medical publications, Wolter's dominance and control over the market is formidable. Overall, Wolters has significant market power in the territiories.

43. By engaging in the unlawful anti-competitive and exclusionary conduct, in violation of the antitrust laws contained in 15 U.S.C. § 2, set forth herein, Wolters has willfully maintained monopoly power. Wolters is a monopolist because, as evidenced by the above-described conduct, it has effectively excluded competition from the relevant market, thereby maintaining its dominant market share in the relevant market, and has profited by its anti-competitive conduct by raising their publication prices and reaping the benefits of its illegal monopoly. The barriers to entry in the relevant market have also prevented competition.

44. Wolter's conduct has proximately caused damages to Plaintiffs in an amount to be proved at trial.

## COUNT TWO
## ATTEMPTED MONOPOLIZATION

44. Plaintiffs reallege paragraphs 1-43. As herein-above alleged, Wolters has engaged in anti-competitive and exclusionary conduct with a specific intent to monopolize the relevant market (as defined above), and has created a dangerous probability of achieving a monopoly, in violation of the antitrust laws contained in 15 U.S.C. § 2.

45. Wolter's conduct has proximately caused Plaintiff's damages in an amount to be proved at trial.

## COUNT THREE

## VIOLATION OF SHERMAN ACT'S § 1

46. Plaintiffs reallege paragraphs 1-43. As herein-above alleged, Wolters has entered into exclusive and "disguised" exclusive contracts with agents that have resulted in unreasonable restraints of trade and competition in interstate commerce in violation of the antitrust laws contained in 15 U.S.C. § 1.

47. Wolter's conduct has proximately caused damage to Plaintiff in an amount to be proved at trial.

## COUNT FOUR

## CLAYTON ACT § 3

48. Plaintiffs reallege paragraphs 1-43. As herein-above alleged, Wolters has made exclusionary contracts for the sale of its medical journals and publications and has established prices, discounts, rebates, and fees on the condition that their agents not use, deal with, or purchase from Plaintiff. The effect of such conduct has been to lessen competition substantially and to tend to create a monopoly in the relevant markets alleged above, in violation of Clayton Act§ 3, contained in 15 U.S.C. § 14.

49. Wolter's conduct has proximately caused damage to Plaintiff in an amount to be proved at trial.

## COUNT FIVE

## DECLARATORY RELIEF (28 U.S.C. § 2201)

48. Plaintiffs repeat and re-allege the foregoing paragraphs 1 through 47 above as though fully set forth herein.

49. An actual controversy exists between Plaintiffs and Defendant regarding

their respective rights and duties in connection with, and the enforceability of Wolter's sales restrictions. Wolters contends that the Plaintiffs sales are unlawful; Plaintiffs oppose these contentions.

49. A judicial determination is necessary and proper at this time under the circumstances so that Plaintiffs may ascertain their rights and duties in connection with Wolter's sales restrictions. In the absence of a judicial declaration, Plaintiffs may have no choice but to comply with an unlawful, unreasonable and unenforceable restraint.

## COUNT SIX
## DEFAMATION

50. Plaintiffs repeat and re-allege the foregoing paragraphs 1 through 43 above as though fully set forth herein.

51. The Defamatory Statements disparaged Plaintiff's business reputation because they expressly characterized Plaintiffs as engaging in illegal acts.

52. These statements were published to Plaintiff's customers, who upon receiving the reports were afraid to do business with Plaintiffs.

53. The Defamatory Statements were false because, among other things, Plaintiff's actions were not improper or illegal.

54. Because Defendant could not explain or otherwise support the Defamatory Statements, Defendants knew, or were reckless as to the fact that, the Defamatory Statements were false.

55. Defendant's publications are ongoing, and their letters continue to be published. Money damages will not make Plaintiffs whole for the injury occasioned by these statements. Unless enjoined by this Court, these false and damaging statements will continue.

56. As a direct and proximate result of Defendant's Defamatory Statements, Wolter's conduct has proximately caused damage to Plaintiffs in an amount to be proved at trial.

## COUNT SEVEN
## TRADE LIBEL

57. Plaintiffs repeat and re-allege the foregoing paragraphs 1 through 43 above as though fully set forth herein.

58. The Defamatory Statements disparaged the integrity of Plaintiff's business, services and products. These statements were made, not only to Plaintiff's customers, but to countless other prospective purchasers of the Plaintiff's subscriptions. These customers and purchasers understood that the Defamatory Statements related very negatively on the integrity of the Plaintiffs.

59. As a direct and proximate result of Defendant's Defamatory Statements, Wolter's conduct has proximately caused damage to Plaintiffs in an amount to be proved at trial.

60. In addition to damages for lost sales, Plaintiff is entitled to punitive damages under California Civil Code section 3294 in that Defendant acted with malice, and such damages should be awarded at the discretion of the court or jury.

61. An actual controversy exists between Plaintiff and Defendant in that Defendant has asserted and may continue to assert disparaging and untrue characterizations about Plaintiff.

62. Unless this Court issues declaratory relief, these false and damaging statements will continue.

## COUNT EIGHT
## FALSE LIGHT

63. Plaintiff Hideo Kiuchi repeats and re-alleges the foregoing paragraphs 1 through 62 above as though fully set forth herein..

64. Before publication of the Wolters Letter, attached hereto as Exhibit A, Plaintiff, Mr. Hideo Kiuchi was a respected member of the Japanese publishing community in various capacities. He was well respected and held a position in the publishing community without any notice of complaints or significant criticism.

65. However, Defendant engaged in a campaign to damage Mr. Kiuchi's reputation and interfere with his ability to utilize his skills in the publication arena.

66. Defendant Wolters shared false stories with other members of the publishing community with the intent of portraying Mr. Kiuchi as a fraud and involved in illegal dealings in the publishing community.

67. This campaign involved publishing false statements of fact in the letters sent to customers and potential customers with whom Mr. Kiuchi worked with.

68. One of the more egregious false statements of fact are that were published were that Mr. Kiuchi engaged in illegal business dealings.

69. Defendant knew or had reason to know that all of these representations are false and published them with the intent to destroying Mr. Kiuchi's reputation in the Japanese Publishing Community.

70. All of those accusations would be highly offensive to any self-respecting individual in the Japanese publishing community, if not a reasonable person in Mr. Kiuchi's position.

71. No one, especially an individual running a scientific and medical publishing office, would want to be known as someone who commits a crime in order to gain business.

72. With this in mind, Defendant published unfounded allegations to publicly humiliate Mr. Kiuchi and ruin his reputation.

73. As a result of Defendants' publication Plaintiff, Mr. Hideo Kiuchi was not able to secure contracts and his reputation was adversely affected to the point that he lost clients and revenue in an amount to be proved at trial.

## COUNT NINE
## UNFAIR COMPETITION UNDER
## CALIFORNIA BUSINESS & PROFESSIONS CODE §17200

74. Plaintiffs reallege and incorporates by reference the allegations of paragraphs 1 through 62 of this Complaint as if fully set forth herein.

75. Defendant's activities as stated herein constitute unfair competition within the State of California and in violation of California law as set forth under Business and Professions Code §17200.

76. Defendant's wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Plaintiff's business, reputation and good will. Plaintiffs have no adequate remedy at law.

## COUNT TEN
## UNFAIR TRADE PRACTICES UNDER
## CALIFORNIA BUSINESS & PROFESSIONS CODE §17500

77. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 through 62 of this Complaint as if fully set forth herein.

78. Defendant's activities alleged herein constitute unfair and deceptive acts and practices in the conduct of its trade and business in violation of California Business and Professions §17500.

79. Upon information and belief, Defendant's wrongful and deceptive

activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to Plaintiff's business, reputation and good will. Plaintiffs have no adequate remedy at law.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs pray:

1. That this Court find that Wolters conduct is in violation of the antitrust laws alleged in this complaint;
2. Award Plaintiffs actual and treble damages proximately caused by Wolter's conduct that is violative of the antitrust laws;
3. Permanently enjoin and restrain Wolters, and those acting in concert with them or at their direction from imposing or enforcing any policy that condition the sales of Wolter's publications on any distributor, sales representative, importer or exporter directly or indirectly;
4. For a judicial determination by this Court that the restrictions and exclusions set forth in Wolters' letter, attached hereto as Exhibit A is contrary to the antitrust laws of the United States and that the portions of the letter between Wolters that conditions and restricts the sales of its publications is, accordingly, unenforceable;
5. That Wolter's publically retract its misleading statements that Plaintiffs are engaging in unlawful conduct, as set forth in their letter, attached hereto as Exhibit A to all of its customers;
6. Award Plaintiffs costs of the suit, simple interest on actual damages, and reasonable attorneys' fees as provided for in 15 U.S.C. § 15(a); and

1  7. For such other and further relief as may be just and equitable.

2

3 Respectfully Submitted,

4

5

6 THE LAW OFFICES OF JOSEPH R. CRUSE, JR.

7

8

9

10 Dated: September 27, 2018    By: */s/ Joseph R. Cruse, Jr.*
   Joseph R. Cruse, Jr.
11 Attorneys for Plaintiffs
   I AND U, INC., BOOK CUBE, KIUCHI
12 SHOTEN and HIDEO KIUCHI

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint 01H.doc

16                                          COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury of all issues that may be tried by jury.

Respectfully Submitted,

LAW OFFICES OF JOSEPH R. CRUSE, JR.

Dated: September 27, 2018      */s/ Joseph R. Cruse, Jr.*
Joseph R. Cruse, Jr.
Attorneys for Plaintiffs
I AND U, INC., BOOK CUBE, KIUCHI SHOTEN and HIDEO KIUCHI

Complaint 01H.doc

17    COMPLAINT